UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NCO FINANCIAL SYSTEMS, INC., | ) | Case No.: 1:09 CV 2653 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| THE GENERAL BAR, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| | ) | |
| THE GENERAL BAR, INC., | ) | |
| | ) | |
| Defendant/Third-Party Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TRAUNER, COHEN, & THOMAS, LLP, | ) | |
| | ) | |
| Third-Party Defendant | ) | ORDER |

Currently pending before the court is Trauner, Cohen & Thomas, LLP's (" Defendant TCT")

Motion to Transfer Venue. (ECF No. 34.)  Specifically, TCT moves the court to transfer this case

to the Northern District of Georgia where Plaintiff NCO Financial Systems Inc. ("NCO") has an

action pending against TCT.  For the reasons set forth below, the court denies  Defendant TCT's

Motion to Transfer Venue.

## I.  FACTS AND PROCEDURAL HISTORY

NCO is a national debt collection company, with its principal place of business in Horsham, Pennsylvania.  (Ohio Compl., ECF No. 2, ¶¶ 1, 8.)  As part of its collection efforts and services, NCO contracted with attorneys who file collections lawsuits on behalf of its clients.  (*Id*., ¶ 9.)  To help identify attorneys who are experts in filing collection matters, NCO relied upon The General Bar Inc. ("General Bar").  (*Id*., ¶ 10.)  General Bar is an Ohio company that promotes attorneys, known as "listees," who specialize in collections work.  (*Id*., ¶¶ 2, 10.)  NCO obtained the services of TCT, a limited liability law partnership organized under Georgia law, through a listing of approved collections attorneys provided by General Bar.  (*Id*., ¶ 12.)  General Bar earned a fee from its "forwarders," here NCO, for the work of its "listees," here TCT.  (*Id*., ¶ 35.)

On August 28, 2007, NCO entered into a contract with TCT, through its managing partner, Russell S. Thomas, in which TCT was responsible for contacting consumers and filing lawsuits against debtors.  (*Id*., ¶¶ 13, 15.)  Pursuant to the agreement, TCT agreed to "diligently pursue the collection of monies due on the referred accounts promptly and in accordance with applicable state and federal law as interpreted in [TCT's] jurisdiction."  (*Id*., Ex. A, ¶ 1.)  As part of the agreement, TCT paid court costs in advance and NCO reimbursed TCT for those costs.  (*Id*., Ex. A, ¶ 2.)  TCT was required to remit to NCO all monies collected from debtors.  (*Id*., Ex. A, ¶ 2.)

In June 2009, NCO conducted a standard audit of TCT's books and records.  During this audit, the auditors discovered problems related to TCT's legal services, reporting, and financial accounting for NCO clients.  (*Id*., ¶¶ 21-22.)  NCO alleges that TCT reported a large number of lawsuits were filed when, in actuality, they were not.  (*Id*., ¶ 23.)  The auditors claim to have found

- 2 -

unsigned TCT checks written for filings fees on NCO accounts that were never submitted to the court, but for which TCT received the appropriate reimbursement. (*Id*., ¶¶ 25-28.)  The auditors claimed to have found a mail bin full of lawsuits on NCO client accounts, none of which were submitted to the court for filing. (*Id*., ¶¶ 28-29.)  NCO alleges that TCT stole and/or embezzled court costs advanced for the non-existent lawsuits. (*Id*., ¶ 24.) On July 1, 2009, NCO filed a lawsuit against TCT in the United States District Court for the Northern District of Georgia for numerous tort and contract claims ("Georgia Litigation"). (Georgia Compl., ECF No. 34-2.)

On October 22, 2009, NCO filed a proof-of-loss claim with Chubb Insurance Solution Agency Inc. ("Chubb Insurance")  for $1.2 million dollars in damages it allegedly suffered as a result of General Bar's actions. (Ohio Compl., ECF No. 2,  ¶ 37, Ex. C.) Based on the insurance policy, NCO claimed that Chubb Insurance is liable directly for General Bar's conduct that caused litigation costs to be stolen, embezzled, unaccounted for, overcharged, or converted. (*Id*., ¶ 58.)

On November 13, 2009, NCO also filed this Complaint against General Bar, Chubb Insurance, and Federal Insurance Company ("FIC") , a subsidiary of Chubb Insurance, in the United States District Court for the Northern District of Ohio ("Ohio Litigation"). (Ohio Compl., ECF No. 2.)  Chubb Insurance and/or its subsidiary FIC were included in this suit because they provide General Bar with liability insurance. (*Id*., ¶ 33, Ex. B.)   NCO brings three claims against General Bar: (1) fraud; (2) negligence and negligent supervision; and (3) negligent misrepresentation. NCO alleges General Bar is at fault because it negligently misrepresented that TCT was an appropriate listee who could competently provide legal services, and it benefitted by this misrepresentation by earning a fee for this service. (*Id*., ¶ 41.) NCO also claims that General Bar did not exercise due diligence in adequately reviewing its listees, here TCT, that it recommended to its forwarders, and

- 3 -

that this failure caused NCO to suffer harm. (*Id*., ¶¶ 41-42.) NCO brings a claim for declaratory judgment against Chubb Insurance and FIC. (*Id*., ¶¶ 54-63.) NCO alleges that the Chubb insurance policy covers "against acts of larceny, embezzlement, fraudulent failure to make accounting or overcharge." (*Id*., Ex. B, ¶ 1.) Pursuant to a confidentiality agreement, Plaintiff did not attach a full copy of the insurance policy to the Complaint.

On February 9, 2010, in the within lawsuit, General Bar filed a third-party complaint against TCT in the Northern District of Ohio. (Third-Party Compl., ECF No. 16.) General Bar seeks contribution and/or indemnification from Defendant TCT to the full extent of any judgment rendered against it in the Ohio litigation. (*Id*., ¶ 9.) Further, General Bar alleges TCT breached its listing contract, (*Id*., Ex. B), and is therefore entitled to contractual indemnity from TCT. (*Id*., ¶¶ 11-14.)

On May 21, 2010, Defendant TCT filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) to the Northern District of Georgia where Plaintiff NCO has an action pending directly against Defendant TCT. (Mot. to Transfer Venue, ECF No. 34.) On June 21, 2010, Chubb Insurance/FIC filed an Opposition to Defendant TCT's Motion to Transfer Venue. (Def.'s Mot. in Opp'n, ECF No. 38.) Also on June 21, 2010, Plaintiff NCO filed an Opposition to Defendant TCT's Motion to Change Venue. (Pl.'s Mot. in Opp'n, ECF No. 39.)

- 4 -

## II. STANDARD

A decision to transfer venue under § 1404(a) lies within the discretion of the district court.[1]

*Duha v. Agrium, Inc*., 448 F.3d 867, 886 (6th Cir. 2006).  The party requesting the transfer bears the

ultimate burden of demonstrating that such transfer is warranted.  *W. R. Hague, Inc. v. Sandburg*,

468 F. Supp. 2d 952, 962 (S.D. Ohio 2006).  Ordinarily, substantial weight is given to the plaintiff's

choice of forum, *United States v. Cinemark USA, Inc*., 66 F. Supp. 2d 881, 887-88 (N.D. Ohio 1999)

and that choice should not be disturbed unless the balance of the § 1404(a) analysis weighs strongly

in favor of transfer.  *Picker Int'l., Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio

1998).  However, the plaintiff's choice is not dispositive, and will not defeat a well-founded motion

for transfer of venue.  *Lewis v. ACS Bus. Servs.*, 135 F.3d 389, 413 (6th Cir. 1998).

## III.   LAW AND ANALYSIS

The court will first address whether Defendant TCT has standing to bring a motion to

transfer venue.  The court will then address under § 1404(a) whether the suit may be transferred to

the Northern District of Georgia. If the District of Georgia is one to which the suit may be

transferred, the court will then address whether it should transfer the suit because it would be in the

interest of justice.

### A. Standing

---

[1]     If another federal district is an alternative forum, dismissal on grounds of *forum non conveniens* is inapplicable, and § 1404(a) applies.  *See Sinochem Int'l Co. v. Malay Int'l Shipping Corp*., 549 U.S. 422, 430 (2007).  Because TCT seeks to transfer this action to an alternative federal district, its motion is properly analyzed under § 1404(a).

Plaintiff NCO claims that § 1404 does not give third-party defendants standing to challenge venue.  (Pl.'s Opp., ECF No. 39, at 2.)   The language of § 1404(a) itself is silent on who has standing to challenge venue. Further, this issue has not been addressed by the Sixth Circuit, and the case law from district courts is conflicting.   Some courts have prohibited third-party venue objections under § 1404(a). *See, e.g., Pelinski v. Goodyear Tire & Rubber Co.*,  499 F. Supp. 1092 (N.D. Ill. 1980); *Seafood Imports, Inc. v. A.J. Cunningham Packing Corp.*, 405 F. Supp. 5, 7-8 (S.D.N.Y. 1975).  Other courts have held that such parties may bring a motion to transfer venue under § 1404(a). *See e.g., Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264 (N.D. Ind. 1987); *Krupp v. Int'l. Inc. v. Yarn Indus., Inc.*, 615 F. Supp. 1103 (D.C. Del. 1985).  This court finds the latter cases persuasive and consistent with § 1404(a) because the statute contains no language limiting the application of the terms 'parties' and 'witnesses' to those involved in an original complaint.  *See Kay v. Nat'l City Mortgage Co.*, 494 F. Supp. 2d 842, 856 (S.D. Ohio 2004). Therefore, the court will not deny Defendant TCT's Motion to Transfer Venue for lack of standing.

**B. § 1404(a) Analysis**

Section 1404(a) provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Accordingly, transfer pursuant to § 1404(a) is only appropriate if the Northern District of Georgia is a "district in which this action might have been brought."  An action "might have been brought" in a district if that district has: (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970).  Therefore, transfer is only authorized under this statute if the plaintiff has an "unqualified right" to bring the action in the transferee forum at the time of the

- 6 -

commencement of the action; i.e., venue must have been proper in the transferee district and the
transferee court must have had jurisdiction over all the defendants. *See id.*; *see also Hoffman v.
Blaski*, 363 U.S. 335, 344 (1960).  For the following reasons, this court finds the Northern District
of Georgia is not a district where this action might have been brought because it lacks personal
jurisdiction over all the defendants.  Therefore,  Defendant TCT's Motion to Transfer Venue is
denied.

### 1. Subject Matter Jurisdiction

Subject matter jurisdiction exists over this action pursuant to 28 U.S.C. § 1332.  Under §
1332(a)(1), district courts have original jurisdiction over all civil actions where the matter in
controversy exceeds the sum or value of $75,000 and is between citizens of different States.  Here,
Plaintiff NCO is a Pennsylvania company, Defendant General Bar is an Ohio corporation with its
principal place of business in Ohio,  Defendants Chubb Insurance and FIC are organized under New
Jersey law with their principal place of business in Texas, and  Defendant TCT is a limited liability
law partnership organized under Georgia law.  (Ohio Compl., ECF No. 2, ¶¶ 1-4; Third-Party
Compl., ECF No. 16, ¶ 2.)  Consequently, the parties are diverse since the citizenship of Plaintiff
is different from all Defendants. Additionally, the amount-in-controversy requirement is met since
the prayer for relief  exceeds $75,000, plus interests and costs.  (Ohio Compl., ECF No. 2, ¶ 5.)
Thus, this action meets the first requirement of § 1404(a).

### 2. Personal Jurisdiction

Next, this court must determine whether personal jurisdiction is proper in the transferee
court. *See Flynn v. Greg Anthony Const. Co. Inc.*, 95 F. App'x 726, 739 (6th Cir. 2003). There are
two types of personal jurisdiction, general jurisdiction and specific jurisdiction.  *See Air Prods. &*

- 7 -

*Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549  (6th Cir. 2007).  Under general jurisdiction, a court may hear a lawsuit against a defendant who has "continuous and systematic" contacts with the forum state, even if the injuries at issue did not arise out of the defendant activities directed at the forum.  *Helicopteros Nacionales de Columbia, S.V. v. Hall*, 466 U.S. 408, 415-16 (1984).   In contrast, specific jurisdiction applies when the injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id.* at 414.  It is only when a defendant has no substantial or continuous contacts with the forum that the district court must determine if specific jurisdiction is satisfied.  *See Farmers Ins. Exch. v. Portage Law Prairie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990). TCT does not argue that the other parties have had such "continuous and systematic" contacts with the State of Georgia such as to subject them to general jurisdiction. TCT only argues in support of its motion to transfer, that Georgia has specific jurisdiction over Defendants in the case. Accordingly, the court will analyze the personal jurisdiction under a specific, rather than general, basis.

When deciding whether personal jurisdiction is proper in the transferee court, a federal court sitting in diversity jurisdiction undertakes a two-step inquiry.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009); *see also Citizens Bank v. Parnes*, 376 F. App'x 496, 500 (6th Cir. 2010).  The exercise of jurisdiction must: (1) be appropriate under the state long-arm statute; and (2) not violate the Due Process Clause of the Fourteenth Amendment.  *Id*.;  *see also Citizens Bank*, 376 F. App'x at 501.

District courts can only assert personal jurisdiction over non-resident defendants if doing so would be consistent with the long-arm statute of the state in which the court sits.  *See Smith v. Dawson-Smith*, 111 F. App'x 360, 362 (6th Cir. 2004).  Accordingly, the Northern District of Georgia has personal jurisdiction over a non-resident defendant only if the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91, so provides. *See James River Ins. Co. v. Kannon & Kannon Ins. Inc.*,

No. CV410-062, 2010 WL 4704773, *1 (N.D. Ga. Nov. 12, 2010). The second requirement is that the exercise of personal jurisdiction under Georgia's Long-Arm Statute must comport with the requirements of constitutional due process. *See Diamond Crystal Brands, Inc. v. Food Movers Int'l. Inc.*, 593 F.3d 1249 (11th Cir. 2010); *see also Smith*, 111 F. App'x at 362 ("In a diversity action, we may assume jurisdiction over a non-resident defendant only to the extent permitted by the state's long-arm statute and by the Due Process Clause.").

### a. Long-Arm Statute

The Georgia Long-Arm Statute provides:

A court of this state may exercise personal jurisdiction over any nonresident or his executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of the state if in person or through an agent, he:

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within the state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

O.C.G.A. § 9-10-91.

This court must find that at least one prong of the long-arm statute is satisfied. *Diamond Crystal*, 593 F.3d at 1259. This court "must interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court." *Diamond Crystal*, 593 F.3d at 1258. In 2005, the Georgia Supreme Court clarified the scope and breath of its long- arm statute in *Innovative Clinical & Consulting Servs. v. First Nat'l Banks of Ames*, 620 S.E.2d 352 (Ga. 2005). According to the Georgia Supreme Court, the long-arm statute must be read literally. *Id*. Thus, the statute imposes

independent obligations for the exercise of personal jurisdiction that are distinct from the demands of Procedural Due Process. *Id*. at 353-55.

Section 9-10-91(1) grants Georgia courts the unlimited authority to exercise personal jurisdiction over any non-resident who transacts any business in Georgia. *Id*. at 675. Subsection (1) reaches only "to the maximum extent permitted by procedural due process." *Id*. In considering whether the Georgia court may exercise jurisdiction over a non-resident based on the transaction of business prong, a three-part analysis applies. *See Aero Toy Store v. Grieves*, 631 S.E.2d 734, 736 (Ga. Ct. App. 2006). Jurisdiction exists on the basis of transacting business in this state if: (1) the non-resident defendant has purposefully done some act or consummated some transaction in the state; (2) if the cause of action arises from or is connected with such act or transaction; and (3) if the exercise of jurisdiction by the courts of this state does not offend traditional fairness and substantial justice. *Id*. at 517-18; *accord Diamond Crystal*, 593 F.3d at 1260, n.11. The significance of this approach is that, under Georgia law, there must be a long-arm assessment that is separate and apart from the due process analysis. *Id.* Thus, the first prong of this test reflects the requirement of subsection (1) of the long-arm statute, transacting business within the state, and the second and third prongs are consistent with the traditional due process inquiry. *Id*.

The *Innovative Clinical* court went on to clarify the correct statutory interpretation of Sections (2) and (3) of the Georgia Long-Arm Statute. Accordingly, the court adopted a "literal construction" of O.C.G.A. § 9-10-91(2) and (3), and held that to qualify under those subsections, the non-resident must do certain acts as delineated by the statute before the non-resident can be subjected to personal jurisdiction in Georgia. *Innovative Clinical*, 279 Ga. at 673-74. Under Subsection (2), a Georgia court may exercise personal jurisdiction over a non-resident who commits a tortious act or omission in the state. *Id*. at 674. Under Subsection (3), a Georgia court may

exercise personal jurisdiction over a non-resident who commits a tortious injury in Georgia caused by an act or omission outside Georgia only if the tortfeasor "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." *Id*.

### b. Due Process

The second limitation to the exercise of personal jurisdiction by a Georgia court over a non-resident defendant is that the exercise of personal jurisdiction must comport with the requirements of constitutional due process. *See Diamond Crystal*, 593 F.3d at 1249. Due process requires a defendant to have a minimum level of contacts with the forum before personal jurisdiction may be exercised. *See Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). To constitute minimum contacts for purposes of specific jurisdiction consistent with due process, the defendant's contacts with the applicable forum must satisfy three criteria: (1) the non-resident defendant does some act by which it purposely avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws, (2) the claims arise out of the defendant's forum-related activities, and (3) the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there. *McGow v. McCurry*, 412 F.3d 1207, 1214 (11th Cir. 2005); *see also Int'l Shoe Co.*, 326 U.S. at 319-20.

### c. Application

The Northern District of Georgia has personal jurisdiction over Third-Party Defendant TCT because it is domiciled in Georgia, is a limited-liability partnership organized under Georgia law with its principal place of business located in Atalanta, and was presumably served there. (Third-Party Compl., ECF No. 16, ¶ 2.) However, it is unclear whether personal jurisdiction exists over non-resident Defendant General Bar. Georgia does not have personal jurisdiction over General Bar

- 11 -

under Subsection (1) of the Georgia Long-Arm Statute because it only applies to contract claims, not those based in tort as alleged by NCO. *See Lutz v. Chrysler Corp*., 691 F.2d 996, 997 (11th Cir. 1982). Further, it is questionable whether General Bar would satisfy Subsections (2) or (3) of the Georgia Long-Arm Statute. First, Defendant TCT has failed to persuasively argue that General Bar committed a tortious injury in Georgia as required by Subsection (2). Plaintiff NCO only alleges that General Bar was negligent as to its supervision of a Georgia law firm, it does not indicate *where* this negligence allegedly occurred. Second, it is unclear whether General Bar's conduct falls under Subsection (3) because the evidence does not show General Bar regularly solicited clients from Georgia, engaged in a persistent course of conduct with TCT or other Georgia law firms, or derived substantial revenue from clients in Georgia. General Bar is an organization that did conduct business with attorneys in several states, including Georgia. However, there are no facts before the court revealing that General Bar's business in that state is such that this court could find that Georgia has personal jurisdiction over General Bar.

The Northern District of Georgia does not have personal jurisdiction over Defendants Chubb Insurance and its subsidiary FIC because they do not satisfy any aspect of the Georgia Long-Arm Statute. TCT does not offer any evidence that Chubb Insurance and FIC have transacted any business relevant to this dispute in Georgia. Nothing in the record demonstrates that the insurance policy between Chubb and General Bar is in any way connected to Georgia. Finding that a relationship exists between the Defendant insurance companies and the State of Georgia simply because the insurance policy at issue "covers listees and claims in all 50 states" (Ohio Compl., ECF No. 2-2, Ex. B) would contravene the fairness principles of jurisdictional due process and interpret the requirement so broadly as to render it virtually meaningless. *James River*, 2010 WL 4704773 at *4 (holding that providing insurance policies to trucking companies that crossed various state

lines and traveled into Georgia does not constitute "transacting business" within the meaning of the Georgia Long-Arm Statute).  Therefore, Defendant TCT does not meet its burden to show that Defendant insurance companies have not transacted any business in Georgia that is related to this case, Subsection (1) of the Georgia Long-Arm statute cannot be the foundation for personal jurisdiction.

Additionally, TCT has not shown that Defendant insurance companies are subject to personal jurisdiction on the basis of Subsection (2), based on the fact that Chubb Insurance or FIC committed a tortious act or omission within the state of Georgia.  Rather, Plaintiff NCO only seeks a declaration of this court that Chubb Insurance and/or FIC is obligated to indemnify NCO for the loss caused by TCT's theft or embezzlement. (Ohio Compl., ECF No. 2, ¶¶ 54-63.)  Here, "[t]he connection between the tort and the interpretation of an insurance contract that may provide indemnification and defense for that tort are not sufficiently related" to establish personal jurisdiction.  *James River,* 2010 WL 4704773, at *4.  Finally, Subsection (3) of the Georgia Long-Arm statute does not apply. NCO has not alleged the insurance companies' out-of-state conduct caused a tort within the State of Georgia,  nor is there any indication they regularly do or solicit business, or engage in other persistent course of conduct, or derive substantial revenue from goods used or consumed or services rendered in Georgia.  *See* O.C.G.A. § 9-10-91(3).  Because "the exercise of personal jurisdiction in Georgia requires a court to find that at least one prong of the long-arm statute is satisfied," *Diamond Crystal*, 593 F.3d at 1259, the Northern District of Georgia does not have personal jurisdiction over the Defendant insurance companies and transfer is not appropriate. As such, the court need not address whether constitutional due process is met.

- 13 -

**3. Venue**

Defendant TCT's motion fails because TCT cannot show that the transferee court, the Northern District of Georgia, has personal jurisdiction over all Defendants.  Thus, it is not a court in which the action might have been brought. Plaintiff NCO, in the last paragraph of its Opposition, asserts that it does not object to this court severing the third-party claim made by Defendant General Bar against Defendant TCT, and transferring the claim to the Northern District of Georgia. It further questions whether this court has personal jurisdiction over TCT. (Pl.'s Br. in Opp., ECF No. 39, at 4.) The court declines to assess this argument in light of the fact that the other parties did not have an opportunity to address them.

**IV.  CONCLUSION**

Defendant TCT's Motion to Transfer Venue is denied as the Northern District of Georgia is not a forum in which the lawsuit may be brought.  (ECF No. 34.)

IT IS SO ORDERED.

/s/ *SOLOMON OLIVER, JR.*
CHIEF JUDGE
UNITED STATES DISTRICT COURT

August 10, 2011

- 14 -